■ TROY GARCED, Appellant, v CLINTON ARMS ASSOCIATES et al., Respondents. [874 NYS2d 18]—

Order, Supreme Court, Bronx County (Kenneth L. Thompson, Jr., J.), entered January 16, 2008, which, insofar as appealable, denied plaintiff's motion to renew a prior order, same court and Justice, entered on or about September 5, 2007, insofar as appealed from as limited by the briefs, granting the motion of defendant Clinton Arms Associates (Clinton) to change venue from Bronx County to Nassau County, affirmed, without costs. Appeal from the September 5, 2007 order, unanimously dismissed, without costs, as superseded by the appeal from the January 16, 2008 order.

Plaintiff sustained severe burns to his neck on premises alleg-
edly controlled by Clinton after he passed out from a heroin
overdose and came into contact with an uninsulated hot water
pipe. A psychosocial assessment conducted in connection with
his admission to Jacobi Hospital on March 18, 2006 states that
he "lives in a first floor apartment with his mother . . . spent
four years in prison on drug charges and has been on parole for
the last two years." Department of Correctional Services rec-
ords, however, reflect that plaintiff had been released from
custody the previous day, having been committed for a parole
violation on December 29, 2005. Plaintiff was again in custody
at the time he commenced this action by filing a summons and
complaint on March 16, 2007. He placed venue in Bronx County
on the basis of his residence immediately prior to his latest pe-
riod of incarceration, purportedly the apartment occupied by his
mother where his injury was sustained.

Clinton moved to change venue to Nassau County, its
principal place of business (CPLR 503 [d]), on the ground that
venue was improperly laid. Clinton's application was supported
by its own records as well as the affidavits of plaintiff's mother
dated April 1, 2005 and April 6, 2007, her letter dated April 27,
2006 and section 8 housing assistance certifications dating back
to 1999, all of which reflect that she was the only person resid-
ing in the apartment.

In opposition, plaintiff submitted records from Jacobi
Hospital, where he was admitted for five days of treatment,
including a skin graft, and his affidavit stating that, prior to
incarceration, he had been residing in his mother's apartment.
He argued that the motion should be denied because Clinton
failed to prove that he lived elsewhere.

In reply, Clinton countered that the full extent of its burden
was to demonstrate plaintiff's lack of residence in the county
designated for trial. Clinton portrayed plaintiff's affidavit as un-
supported and self-serving, noting that, on admission to Jacobi
Hospital, plaintiff had given the name "Troy Pagan," not "Troy
Garced." Finally, Clinton contended that plaintiff had failed to
rebut his mother's numerous statements that she resided alone.

Plaintiff submitted further papers, denominated a surreply,
including additional records from Jacobi Hospital and records
from Lenox Hill Hospital, where he was briefly admitted in
early April 2006 for treatment for a skin infection at the site of
his skin graft. He maintained that any confusion over his
identity in Jacobi Hospital records was attributable to his
brother's surname, which is "Pagan." Plaintiff noted that those
records had been corrected to reflect his true name.

Following Supreme Court's grant of a change of venue "for good cause shown," plaintiff brought a motion to renew and reargue, attaching a New York State identity card issued July 22, 2003 that had expired in October 2003, a pharmacy receipt dated April 10, 2006 and a mobile phone bill dated July 1, 2005. Plaintiff stated that his mother had been unable to locate these documents for him because she had been ill at the time he was preparing his response to the original motion.

Supreme Court denied plaintiff's motion in all respects. The court noted that he had failed either to demonstrate that the additional documents were previously unavailable to him or to offer a reasonable excuse for his omission to submit them in opposition to Clinton's original motion.

There is no dispute that the evidence submitted by Clinton in support of its motion demonstrated that plaintiff failed to establish residency in the Bronx. What divides us is whether the evidence adduced by plaintiff in opposition to the motion is sufficient to raise a question of fact concerning his residence at his mother's apartment.

As the parties recognize, the proper venue is the county in which plaintiff resided prior to his incarceration in the spring of 2007 (*see Matter of Corr v Westchester County Dept. of Social Servs.*, 33 NY2d 111, 115 [1973]; *Farrell v Lautob Realty Corp.*, 204 AD2d 597, 598 [1994]). The difficulty with plaintiff's allegation that he lived with his mother is the highly regulated nature of the apartment in which she resides. In particular, the approval of the relevant housing authority is required "to add any other family member as an occupant of the unit" (24 CFR 982.551 [h] [2]), as mandated by Department of Housing and Urban Development regulations (24 CFR 966.4 [a] [1] [v]; *see Matter of Abdil v Martinez*, 307 AD2d 238, 239 [2003]). Even assuming that plaintiff is not legally barred from claiming the apartment as his residence (*see Katz Park Ave. Corp. v Jagger*, 11 NY3d 314, 317 [2008] [nonresident status under Immigration and Nationality Act precludes New York primary residence]), the record is devoid of any indication that plaintiff sought the necessary approval to occupy the apartment, such as an application by his mother to add him as a relative and member of her household. The record is also bereft of affidavits from neighbors or building personnel that might support plaintiff's presence in the apartment (*cf. Morrisania II Assoc. v Harvey*, 139 Misc 2d 651, 654 [1988]). Indeed, the documentary evidence concerning his mother's tenancy flatly contradicts plaintiff's residence in the apartment, specifically, her own sworn and unsworn statements and the recertification state-

ments required to be obtained by Clinton in the course of its participation in the section 8 program (*see id.* at 660-661).

Plaintiff's opposition to the original motion consisted merely of his conclusory affidavit and a single page from the hospital records indicating that he arrived at, and was admitted to, Jacobi Hospital on March 18, 2006 and that he provided the hospital with his mother's address. Neither the fact that plaintiff sustained injury while at his mother's apartment nor his occasional presence in the Bronx for treatment during the following month is dispositive of the determination of residence and, thus, venue. The first page of the hospital record establishes, at most, that he was present at his mother's apartment on the date of injury. But an isolated visit to his mother upon release from custody does not suffice to overcome her consistent averments that she was the sole occupant of the apartment (*see Furlow v Braeubrun*, 259 AD2d 417 [1999]). As to plaintiff's contention that Clinton failed to establish that he resided in a different county, we note that a defendant's burden on an application to change venue is limited to establishing that the designated county is improper (CPLR 510 [1]); the movant is not obliged to offer proof of the plaintiff's actual abode.

The practice of filing a surreply was repudiated by this Court in *Ritt v Lenox Hill Hosp.* (182 AD2d 560, 562 [1992]; *see also Lumbermens Mut. Cas. Co. v Morse Shoe Co.*, 218 AD2d 624, 626 [1995]), which has been applied to bar consideration of such submissions (*see e.g. Pinkow v Herfield*, 264 AD2d 356 [1999]; *cf. Sanford v 27-29 W. 181st St. Assn.*, 300 AD2d 250, 251 [2002]). Even if we were to accept plaintiff's additional evidence, which we decline to do (CPLR 2214 [b], [c]), it establishes only that he was admitted for five days of treatment at Jacobi Hospital and, several weeks later, for two days of treatment at Lenox Hill Hospital, again supplying his mother's address and naming her as his "primary contact."

To the extent plaintiff's subsequent application can be deemed a motion to renew, the additional evidence submitted is uncompelling. A pharmacy receipt dated April 10, 2006 is the only documentary evidence remotely contemporaneous with plaintiff's postaccident incarceration, predating it by nearly a year. That plaintiff may have used the subject apartment as a billing address hardly serves to demonstrate residence. Concur—Tom, J.P., Nardelli, Sweeny and DeGrasse, JJ.

McGuire, J., dissents in a memorandum as follows: On March 18, 2006, plaintiff allegedly suffered burn injuries when he passed out in the bathroom and came into contact with hot water pipes in apartment 1L in a building at 2160 Clinton Avenue

in the Bronx. The building is owned by defendant Clinton Arms Associates. Plaintiff was subsequently arrested and convicted of a drug offense and incarcerated. While incarcerated, plaintiff commenced this action in March 2007 against the building's owner to recover damages for the injuries he sustained as a result of the incident. Plaintiff, asserting in both the summons and the complaint that he resided in the Clinton Avenue apartment, commenced the action in the Bronx.

The owner moved to change venue as of right, arguing that plaintiff did not reside in the Clinton Avenue apartment (*see* CPLR 510 [1]); the owner sought to change venue from the Bronx to Nassau County, the county in which it has its principal office (*see* CPLR 503 [d]). In support of its motion, the owner submitted public housing (Section 8) documents executed by plaintiff's mother that indicated that she was the only occupant of the apartment. The owner also submitted the affidavit of the president of its general partner who averred that, upon a search of the general partner's records, the only tenant listed in the apartment was plaintiff's mother. Included in the owner's motion papers were plaintiff's medical records regarding the treatment he received following the incident.

In opposition, plaintiff submitted his own affidavit in which he stated that "I am currently incarcerated [in an upstate] Correctional Facility. Prior to my incarceration, I last resided at 2160 Clinton Ave., Apt. 1L, Bronx, New York, with my mother. I resided at that location on the date of the accident, March 18, 2006, until later in the year, when I was arrested and incarcerated. When admitted to Jacobi Hospital on the day of the accident with severe burns, I gave my address as 2160 Clinton Ave., Apt. 1L, Bronx, NY." The medical records submitted by the owner indicate that plaintiff did give the hospital staff the address of the Bronx apartment as his residence. Notations in those records also indicate that plaintiff told a social worker at the hospital that he resided in the apartment with his mother. While most of the records are labeled as being for "Troy Pagan," a notation in the social worker's discharge plan and patient assessment states that the "correct name" of the patient is "Troy Garced."

Supreme Court granted the motion and directed that venue be changed to Nassau County. Plaintiff subsequently moved for leave to renew the owner's motion, submitting documents indicating that he resided in the apartment. Supreme Court denied plaintiff's motion, finding that plaintiff failed both to demonstrate that the documents were not known to him when the owner's motion was made and to offer a valid excuse for

failing to produce those documents in opposition to the owner's motion. Plaintiff appealed from both orders.

A defendant seeking to change venue as of right under CPLR 510 (1) has the burden of demonstrating that, at the time the action was commenced, the plaintiff did not reside in the county plaintiff designated (*see Clarke v Ahern Prod. Servs.*, 181 AD2d 514 [1992]; *see generally* CPLR 503 [a]). Since plaintiff was incarcerated at the time he commenced this action, for the purposes of determining his residence we must look to the residence he had prior to his incarceration (*see Farrell v Lautob Realty Corp.*, 204 AD2d 597 [1994]; *see also Matter of Corr v Westchester County Dept. of Social Servs.*, 33 NY2d 111 [1973]).

The Section 8 paperwork and affidavit of the president of the owner's general partner were sufficient to satisfy the owner's initial burden of demonstrating that plaintiff did not reside in the Bronx apartment prior to his incarceration.

In opposition, plaintiff raised an issue of fact warranting a hearing. Plaintiff, who consistently asserted that he had only one residence (the apartment), expressly averred that he lived in the apartment with his mother on the date of the accident in March 2006 through the date he was arrested and incarcerated later in 2006. He also averred that he told the hospital staff that he resided in the apartment. Under these circumstances, I fail to see how this affidavit is conclusory (*cf. Furlow v Braeubrun*, 259 AD2d 417 [1999] ["Plaintiffs' conclusory affidavits attesting to the Bronx residency of one of them, unsupported by documentation probative of such residency, were insufficient to rebut defendant's proof in the form of hospital and motor vehicle records showing that both plaintiffs reside in Westchester County" (citation omitted)]; *Martinez v Semicevic*, 178 AD2d 228 [1991] [plaintiff's conclusory affidavit that he had two residences, one of which was in the county in which he commenced the action, was insufficient to raise an issue of fact because it was unsupported by documentary evidence and lacking details as to how long he resided in the designated county and how he divided his time between the two alleged residences]).

In any event, plaintiff's affidavit is not the only evidence substantiating his claim that he resided in the apartment. Plaintiff's medical records, submitted by the owner in support of its motion, indicate that he resided in the apartment with his mother prior to his incarceration. Notably, moreover, the incident giving rise to this action occurred in the apartment. The majority exalts form over substance with its apparent conclusion that plaintiff's medical records should not be

considered because he submitted a few such records in surreply. As noted above, in its initial motion papers Clinton Arms submitted portions of plaintiff's medical records, including records that indicate that he resided in his mother's apartment at the time he was injured. Obviously, no purpose is served by requiring plaintiff to submit the same records in his opposition that were submitted by Clinton Arms in its motion papers.

The majority's conclusion that the Section 8 documents submitted by defendant establish, as a matter of law, that plaintiff did not reside in the apartment prior to his incarceration is simply wrong. Included within the Section 8 documents is an unsworn letter by the mother dated April 27, 2006, asserting that she "[l]ives alone in the apartment." The documents also include sworn letters from plaintiff's mother, dated April 1, 2005, approximately one year prior to both the accident and plaintiff's subsequent incarceration, and April 6, 2007, more than a year after the accident and plaintiff's incarceration, asserting that she lived alone in the apartment. As discussed above, given plaintiff's incarceration after the accident, the central issue is not whether plaintiff was residing in the apartment consistently or inconsistently with Section 8 requirements, but whether, as plaintiff swore in his affidavit, he was residing in the apartment prior to his incarceration. Unfortunately, the majority simply credits the mother's Section 8 documents, which plaintiff did not sign, because such housing is "highly regulated." Of course, that someone other than an authorized tenant might reside in a Section 8 unit is not only possible but rather unremarkable.* The decisive point is that the mother's Section 8 documents do not conclusively establish anything, let alone that plaintiff was not residing in the apartment at the time of the accident through his subsequent incarceration.

The majority's most glaring and crucial error is its characterization of plaintiff's affidavit as conclusory. As discussed above, in that affidavit he swore that "[p]rior to my incarceration, I

---

* The majority's insinuation that plaintiff might be barred from claiming that he lived in the apartment is wrong. Plaintiff did not sign any of the Section 8 documents submitted by Clinton Arms in support of its motion and there is no suggestion that he reviewed (let alone agreed with) those documents before his mother tendered them to Clinton Arms. The majority's reliance on *Katz Park Ave. Corp. v Jagger* (11 NY3d 314 [2008]) is woefully misplaced. The issue there was whether a person was barred from claiming that her primary residence was a Manhattan rent stabilized apartment given that she was a foreign national who was in the United States on a tourist's visa. In contrast, the issue here is whether one who claims to have resided in a particular apartment is barred from so claiming based on the representations of another who lived in the unit.

last resided at 2160 Clinton Ave., Apt. 1L, Bronx, New York, with my mother. I resided at that location on the date of the accident, March 18, 2006, until later in the year, when I was arrested and incarcerated." Obviously, this affidavit makes factual assertions about where plaintiff resided and when he resided there. That the affidavit itself was not accompanied by documentary evidence is irrelevant. Similarly, that plaintiff did not submit "affidavits from neighbors or building personnel that might support [his] presence in the apartment" is irrelevant. No principle of law requires plaintiff to bear that burden and the majority's only support for its conclusion that he was so required is a "cf." citation to a Civil Court decision in a landlord-tenant matter. Moreover, there is no basis in the law—the majority unsurprisingly cites nothing—for concluding that plaintiff's sworn assertions were conclusively refuted by the sworn and unsworn assertions to the contrary submitted by the owner.

At bottom, based on the submissions before it on the owner's motion, Supreme Court should have held a hearing prior to determining whether venue was properly laid (*see generally Collins v Glenwood Mgt. Corp.*, 25 AD3d 447 [2006]; *Rivera v Jensen*, 307 AD2d 229, 230 [2003]). The majority therefore errs in making several credibility determinations, e.g., that plaintiff was injured in the apartment during "an isolated visit to his mother upon [his] release from custody," that the mother was the sole occupant of the apartment, based on the paper submissions. The majority's disposition is at odds with settled precedent, which dictates that "[w]here resolution of . . . a factual issue ultimately depends on evaluating the credibility of the affiants, a hearing should be held to resolve any inconsistencies" (*Rivera*, 307 AD2d at 230). Concomitantly, the majority errs in disturbing plaintiff's statutory right to lay venue in the county of his residence (*see* CPLR 503 [a]; *Baccigalupi v Michel*, 170 AD2d 635 [1991]).

Since I believe that the order granting the owner's motion should be reversed, I need not and do not decide the issue of whether the order denying plaintiff's motion for leave to renew was properly denied; under my view the appeal from the order denying plaintiff's motion for leave to renew would be rendered academic.