OPINION OF THE COURT
Peter H. Moulton, J.
It is ordered that this motion for an order directing the issuance of an open commission to enable movant to take the deposition of Eliyahu Ezaqui in the State of Florida, where Ezaqui is currently incarcerated, and directing Ezaqui to answer questions and not assert a Fifth Amendment privilege against self-incrimination is denied, and the underlying petition is dismissed.
Petitioner Fidelity National Title Insurance Company (Fidelity) brought this petition in April 2011 pursuant to CPLR 3102 (c) to preserve certain information before the commencement of an action. Specifically, Fidelity sought an order directing the deposition of Eliyahu Ezaqui (Ezaqui) prior to the commencement of Ezaqui’s imminent incarceration in Florida. In its petition Fidelity asserted that Ezaqui had first-hand knowledge of facts pertinent to “approximately” 14 title claims that have been submitted to Fidelity concerning apartments in housing developments in Brooklyn. Ezaqui’s actions in developing and marketing the housing developments were the foundation of the federal criminal prosecution that resulted in his conviction.
In an order dated April 14, 2011, this court directed that the deposition go forward in New York City on April 22, 2011. Ezaqui appeared for the deposition, with counsel, and declined to answer every substantive question posed to him on the basis of his Fifth Amendment right to avoid self-incrimination. Days after this deposition, Ezaqui was duly transported to Florida, where he is currently incarcerated at the Pensacola Florida Federal Penitentiary Camp.
Petitioner now moves for an open commission to continue the deposition in Florida and for a sweeping order directing Ezaqui that he may not assert his Fifth Amendment rights at the deposition. There has been no response from Ezaqui to the motion.
Petitioner does not address whether this court still has jurisdiction over Ezaqui. This court had in personam jurisdiction over him when this suit was commenced, but he is now incarcerated out of state. The general rule is that an incarcerated person *510 does not involuntarily give up his domicile as a result of his imprisonment. (See People v Cady, 143 NY 100 [1894]; Farrell v Lautob Realty Corp., 204 AD2d 597 [1994].) This general rule may not apply in given cases where the incarcerated person is not likely to return to the place he lived before he was incarcerated. CE.g. Matter of Andros, 3 Misc 3d 216 [2004].) Petitioner alludes to the possibility that Ezaqui may settle in Israel after he serves his sentence. Because of these unaddressed questions concerning Ezaqui’s domicile, it is unclear whether he falls within this court’s in personam power.
Moreover, given the procedural posture of this proceeding, it is not clear that Ezaqui falls within the ambit of this state’s long-arm statute. (CPLR 302.) That statute provides, in relevant part:
“(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
“1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
“2. commits a tortious act within the state.”
Ezaqui is currently a respondent in a special proceeding brought for pre-action discovery; he is not the defendant in a “cause of action.” Fidelity brought this proceeding to preserve information allegedly known by Ezaqui pursuant to CPLR 3102 (a); it does not assert any cause of action against him. There is thus no “cause of action” which could provide an anchor for long-arm jurisdiction under CPLR 302.
Indeed, it could be argued that Fidelity’s request for an open commission is an admission of the court’s lack of in personam power over Ezaqui. An open commission is required where a court of this state has no subpoena power over a noncooperating nonparty witness. (See 6 Weinstein-Korn-Miller, NY Civ Prac 1i 3102.05.) If Ezaqui were a defendant in an action, as opposed to a respondent in a special proceeding brought pursuant to CPLR 3102 (c), he would be subject to this court’s power to compel his presence at a deposition under CPLR 3126.
In the absence of in personam power, this court has no power to direct Ezaqui to do anything, much less direct him on the proper exercise of his Fifth Amendment privilege against self-incrimination.
*511 Even assuming what petitioner has failed to demonstrate— that this court has in personam jurisdiction over Ezaqui — the court would deny petitioner’s motion. The right to pre-action disclosure must be weighed by the petitioner’s need for the disclosure and the burden of obtaining it.
When Ezaqui was located in New York, this balance favored disclosure. However, he is now incarcerated in Florida. Ordering his deposition in a federal prison in Florida will necessarily involve the courts of that state, and the federal correctional authorities that have custody of Ezaqui. A deposition held in a correctional facility is logistically more complicated than one held in a lawyer’s office. Ezaqui’s likely persistence in asserting his Fifth Amendment privilege, possibly while proceeding pro se, would require further judicial intervention either by this court or by a court in Florida.* Fidelity has not justified this expenditure of judicial and correctional resources by showing why Ezaqui’s pre-action deposition is crucial to its defense against title insurance claims.
Fidelity has not set forth what unique information is possessed by Ezaqui that it cannot obtain by other means. Ezaqui was convicted after a trial. It is likely that the record of that criminal trial would provide a great deal of information concerning the transactions that gave rise to the title claims asserted against Fidelity. Additionally, while pre-action disclosure is sometimes warranted to allow a party to formulate an answer in a lawsuit (see General Aniline & Film Corp. v Bayer Co., Inc., 188 Misc 929 [1946], affd 281 App Div 668, affd 305 NY 479 [1953]), the motion papers make no mention of any lawsuit pending against Fidelity. It is unclear from Fidelity’s papers how a dispute concerning the title claims would be resolved: by litigation, by arbitration, or by some other means. The forum for resolution matters. A petitioner seeking disclosure under 3102 (c) for an arbitration must demonstrate a higher need, usually formulated as “extraordinary circumstances,” before a court will order the disclosure. (E.g. Matter of Travelers Indem. Co. v United Diagnostic Imaging, P.C., 73 AD3d 791 [2010].)
The denial of this motion and dismissal of the petition is of course without prejudice to Fidelity seeking disclosure from *512 Ezaqui in the context of a lawsuit, or by some other properly supported application made to a court with jurisdiction over Ezaqui. The motion is denied and the petition is dismissed without prejudice. The clerk shall enter judgment dismissing the petition.

 The difficulty in providing prospective rulings on all claims of privilege to be asserted at an oral deposition suggests that a better procedure might be for Fidelity to proceed on some form of written questions, such as letters rogatory. The court and the deponent could review the questions to be asked and consider ahead of time whether there is a well-taken objection based on privilege to a given question.